**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLIANCE INDUSTRIAL** | ) | **CASE NO.1:24CV00782** |
| **SOLUTIONS, LLC., ET AL.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DAVID BISHOP, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Revman International Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Venue or, in the Alternative, to Transfer Venue. (ECF # 18).  For the following reasons, the Court finds it lacks personal jurisdiction over Revman and transfers Alliance's claims against Revman only to the United States District Court of South Carolina for further adjudication.

According to Plaintiffs' Complaint, Plaintiffs Alliance Industrial Solutions, LLC.  and Alliance Solutions Group, LLC.  ("Plaintiffs")  are Ohio-based companies that run a nationwide network of staffing and recruitment agencies.  Defendant Revman International Inc. ("Defendant") is provider of high fashion home furnishings products and is incorporated in Delaware with its principal place of business in New York.  Defendant Cornerstone Staffing Solutions, LLC.  is a California-based company that also provides staffing services both permanent and temporary.  Defendant David Bishop is an Indiana resident and Defendants

Aleisha Rambusch and Michelle Hendrix are South Carolina residents.

In May of 2020, Alliance hired Defendant Bishop as President.  In this role, Bishop was responsible for creating, communicating and implementing Alliance's overall strategy and direction, exploring new opportunities, overseeing employees and ensuring Alliance's financial well-being and customer satisfaction.  In his capacity as President, Bishop had access to all of Alliance's trade secrets, including: pricing, customers, employee information and business and marketing strategies.

To protect its trade secrets, Alliance and Bishop entered into an employment agreement that included non-disclosure, non-competition and non-solicitation clauses.

On July 11, 2023, Bishop's employment with Alliance was terminated.  On July 21, 2023, Bishop signed a severance agreement which included a release and waiver of rights.  Under the terms of the severance agreement, Alliance agreed to pay Bishop $60,000 in eight bi-weekly installments with an additional $100,000 lump sum payment conditioned upon Bishop releasing all claims against Alliance.  It further contained an agreement that the restrictive covenants in his employment agreement concerning his  non-solicitation and non-compete obligations continued to be enforceable under the terms of his employment agreement.  Alliance ultimately paid the entirety of the amounts under the severance agreement.

Shortly after his termination from Alliance, Bishop accepted a position as Vice-President of National Onsite Programs with Cornerstone, a direct competitor of Alliance in many of the same markets.  In his role as Vice-President at Cornerstone, Bishop is performing the same or substantially similar job duties as those he performed with Alliance despite the agreed upon restrictions he signed as part of his severance agreement.

On January 22, 2024, Revman gave Alliance thirty days written notice it was terminating its Agreements effective February 26, 2024. No explanation for the termination of these agreements was given to Alliance.

Both Hendrix and Rambusch have employment agreements with Alliance that contained non-compete and non-disclosure clauses.

Bishop had previously worked with Revman while employed with another staffing company prior to his employment with Alliance. Upon his employment with Alliance, Bishop successfully brought Revman's business to Alliance. Bishop's efforts led to an agreement between Alliance and Revman to use Alliance's staffing services in Revman's Spartanburg facility. As a result of the Spartanburg Agreement, Alliance provided dozens of employees at Revman's Spartanburg facility along with supervisory employees, which included Hendrix and Rambusch.

The Alliance-Revman Spartanburg Agreement contained a non-solicitation clause prohibiting Revman from soliciting, employing or attempting to solicit or employ any Alliance employee, including supervisors, for a period of one year following the termination of the Agreement.

Because the Spartanburg Agreement proved successful, the parties entered into a second agreement wherein Alliance would provide staffing services for a new Revman facility in Grantsville, Utah. The Grantsville Agreement involved similar non-solicitation requirements as the Spartanburg Agreement.

Bishop's employment with Alliance ended on July 11, 2023. Shortly thereafter, he accepted employment with Cornerstone, a competitor of Alliance in the staffing industry. Then,

3

on January 22, 2024, Revman gave Alliance its contractually required thirty day written notice of termination of the Spartanburg and Grantsville Agreements.

Upon information and belief, Alliance alleges Bishop was the driving force behind Revman's cancelling the Spartanburg and Grantsville Agreements in violation of his severance agreement with Alliance.  In addition, Alliance contends Bishop encouraged Alliance employees, including Hendrix and Rambusch, to terminate their employment with Alliance and sign with Revman instead.  This resulted in ninety-six Alliance employees resigning their positions with Alliance and signing with Cornerstone.

Alliance claims Bishop further violated his non-disclosure agreement by disclosing to Cornerstone Alliance's trade secrets, including:  business development plans and strategies, marketing plans and strategies, pricing and margin information, customer information and employee information.

Alliance further claims Hendrix and Rambusch both worked for Cornerstone and engaged in soliciting Alliance employees to work for Cornerstone while they were still employed with Alliance in violation of their restrictive covenants.  Moreover, both Rambusch and Hendrix disclosed Alliance's confidential trade secrets to Cornerstone.

Plaintiffs allege Breach of Contract claims against Bishop, Hendrix and Rambusch, Tortious Interference with Contract against Revman and Cornerstone, Tortious Interference with Business Relationship against Bishop, Hendrix, Rambusch and Cornerstone, Breach of Duty of Loyalty against Hendrix and Rambusch, Misappropriation of Trade Secrets in Violation of the Defend Secrets Act 18 U.S.C. 1836 against all Defendants and Misappropriation of Trade Secrets in Violation of the Uniform Trade Secrets Act O.R.C. 1333.61.

4

**Defendant Revman's Motion to Dismiss for Lack of Personal Jurisdiction**

Revman moves to dismiss because it alleges it lacks sufficient contacts with the State of Ohio for the Court to exercise personal jurisdiction over it.  Revman asserts it has no offices, owns no property and has no employees in Ohio.  It has two warehouse facilities: one in Spartanburg, South Carolina, the other in Grantsville, Utah.

In December 2020, Revman contracted with Alliance to provide staffing services to its Spartanburg, South Carolina warehouse facility.  The decision to use Alliance was prompted by Revman's prior experience with Bishop, who had previously worked for Prologistix a staffing company that Bishop had worked for prior to his employment with Alliance.  Prologistix supplied the employees used by Revamn at the Spartanburg facility.  When Bishop transitioned from Prologistix to Alliance he brought with him all the Prologistix staff employed by Revman at the Spartanburg facility.

When Alliance terminated Bishop's employment, Revman grew dissatisfied with Alliance's performance.  When they learned that Bishop had taken employment with Cornerstone, Revman terminated its contract with Alliance and contracted with Cornerstone due to their relationship with Bishop.  Just as Alliance had hired the Prologistix employees working at the Revman Spartanburg facility, Cornerstone hired the Alliance employees working at the same facility.

On March 21, 2024, Revman filed for declaratory judgment in South Carolina and Alliance filed a counterclaim for Breach of Contract.  Instead of litigating all their disputes in South Carolina where the alleged incidences occurred, Alliance filed suit in Ohio.  No Defendant resides in Ohio, no events that resulted in the causes of action occurred in Ohio, rather, the only

Ohio connection is Alliance's residence here.  No Revman employee has traveled to Ohio to meet with Alliance employees.  Alliance has never provided any information to Revman in Ohio.

Because Revman is a Delaware company with its principal place of business in New York, and has no physical presence in Ohio, it alleges it is not subject to general jurisdiction in Ohio.  The only Ohio connection according to Revman is a consent to jurisdiction by the parties in the Spartanburg Agreement in Ohio.  However, none of Alliance's causes of action against Revman arise out of the Spartanburg Agreement.  Thus, its forum selection clause has no bearing on the Court's exercise of personal jurisdiction over Revman.

If Alliance's Tortious Interference claim or Misappropriation of Trade Secrets claims did arise out of the Spartanburg Agreement, Revman argues Alliance would be compelled to assert them in the South Carolina action as compulsory counterclaims.

According to Revman, it is unnecessary to evaluate whether Alliance can satisfy Ohio's long-arm statute as it cannot show it can satisfy the due process requirement for personal jurisdiction because Revman did not purposefully avail itself of the opportunity to conduct business in Ohio, Alliance's claims do not arise from Revman's activities in Ohio and Revman's actions do not have a substantial enough connection to Ohio to warrant the exercise of personal jurisdiction over it.

Nor is venue proper in Ohio, according to Revman, because no substantial part of the events or omissions giving rise to the claims occurred in Ohio.  Nor is there any property in Ohio that is the subject of the claims at hand.  The employment agreements that were allegedly interfered with involved residents of South Carolina or Indiana and the allegedly misappropriated trade secrets were provided to Revman in South Carolina per Alliance's Complaint.  The

6

Spartanburg Agreements forum selection clause has no bearing on venue because the claims at issue do not arise from the Agreement.

Finally, Revman asks that the Court find that even if it has personal jurisdiction over Revman or finds that venue is appropriate in Ohio that transfer to South Carolina is appropriate as that is the location where the greatest number of witnesses reside and where the events that form the basis of the claims against it occurred and where the majority of the evidence will be found.  Because the claims herein could have been brought in South Carolina, and because the forum selection clause, even if applicable, is permissive rather than compulsory, South Carolina is the forum that has the greatest connection to the witnesses, evidence and property at issue.

**Alliance's Opposition**

Alliance opposes Revman's Motion contending that the Motion should be denied because:   Revman waived any challenges to personal jurisdiction when it filed an Answer and Motion for Judgment on the Pleadings; in the Spartanburg Agreement Revman expressly consented to jurisdiction with Ohio courts; Revman has sufficient contacts with the State of Ohio to exercise personal jurisdiction over it, and it knew its tortious activities would cause serious harm in Ohio.

## LAW AND ANALYSIS

Fed. R. Civ. P. 12(b)(2) authorizes dismissal of a complaint for lack of personal jurisdiction. The plaintiff bears the burden of showing that a federal court has personal jurisdiction over the defendant.  However, when the court relies solely on written materials and affidavits, that burden is relatively slight; and the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetch Int'l, Inc.*, 503 F.3d 544

7

549 (6th Cir.2007). The court is obligated to view the pleadings and affidavits in a light most favorable to the plaintiff; and when the court disposes of a Rule 12(b)(2) motion without an evidentiary hearing, it does not consider contrary facts proffered by the party seeking dismissal. *MAG IAS Holdings, Inc. v. Schmückle,* 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998); *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir.1996).

"A court has three different paths to resolve a Rule 12(b)(2) motion: (1) 'decide the motion upon the affidavits alone'; (2) 'permit discovery in aid of deciding the motion'; or (3) 'conduct an evidentiary hearing to resolve any apparent factual questions.'" *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.,* 539 F. Supp. 3d 822, 827 (S.D. Ohio 2021) quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). "Where the motion will be decided on the affidavits alone -- as the Court will do here -- a plaintiff need only make a prima facie showing of personal jurisdiction." *Premier,* 539 F. Supp.3d 827 citing *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003).

The Court will decide the issue on the briefs and declaration alone, as neither party has requested discovery on the issue nor have they requested an evidentiary hearing. Although Alliance bears the burden of showing the Court has personal jurisdiction over Revman, that burden is "relatively slight."

## Waiver

The Sixth Circuit has described waiver "as a fact-specific inquiry into whether '[t]he actions of the defendant ... amount[ed] to a legal submission to the jurisdiction of the court.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 894 (6th Cir. 2021) quoting *Gerber v. Riordan,* 649

F.3d 514 (6th Cir. 2011).  "Only those submissions, appearances and filings that give '[the plaintiff] a reasonable expectation that [the defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking,' result in waiver of a personal jurisdiction defense." *Id.* quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.,* 623 F.3d 440, 443 (7th Cir. 2010)).

Here, Alliance contends that Revman waived any challenge to the Court's exercise of personal jurisdiction over it when it filed an Answer and a Motion for Judgment on the Pleadings.  However, Revman notes that its Answer was filed along with its Motion to Dismiss for Lack of Personal Jurisdiction and its Motion for Judgment on the Pleadings was filed after its personal jurisdiction Motion.  Therefore, the sequence of events evidences Revman's intent to challenge personal jurisdiction before engaging the Court in any substantive dispute over the merits of Alliance's claims.

A review of the docket demonstrates that Revman's filings did not create in Alliance a "reasonable expectation" that Revman would defend the suit on the merits.  Alliance filed suit on May 1, 2024.  After service, all Defendants moved for extensions of time until July 30, 2024 to file their responses to Alliance's Complaint.  Those motions were unopposed by Alliance. Moreover, at a Case Management Conference ("CMC") held on July 23, 2024, Revman's counsel informed the Court and opposing counsel of his intent to file a motion to have the case transferred to South Carolina.  Subsequently, Revman filed its Motion to Dismiss for Lack of Personal Jurisdiction on July 30, 2024, just under three months from the filing of Alliance's Complaint.

9

Alliance argues it had a reasonable expectation that Revman would litigate the action in this Court.  Revman's Rule 26 Report made no reference to its intent to challenge personal jurisdiction.  Nor did Revman's counsel make any representation to the Court in the July 23, 2024 CMC that it would file a motion on lack of personal jurisdiction.  Revman filed a Motion for Judgment on the Pleadings that did not assert the personal jurisdiction defense.  In *Boulger v. Woods,* 917 F.3d 471, 477 (6th Cir. 2019), the Sixth Circuit held this to be evidence that a defendant intended to litigate the merits of the case in the district court.  The Sixth Circuit held the filing of the dispositive motion was "inconsistent with the idea that the district court lacked personal jurisdiction over the defendant[ ]."  However, that case is distinguishable, as Revman did challenge personal jurisdiction in a motion filed early in this litigation.  Likewise, the Court has had to do little other than conduct a phone CMC before addressing whether it has personal jurisdiction over Revman.  Consequently, there has been no wasted efforts by the Court.   Thus, the Court finds there was no action by Revman that created any reasonable expectation in Alliance that it intended to defend the suit on the merits.

**Effect of the Forum Selection Clause**

Page three of the Spartanburg Agreement between Alliance and Revman reads under "Miscellaneous:"

> This Agreement will be governed in all respects, including validity, construction, interpretation and effect by the laws of the State of Ohio, without regard to its conflicts of law principles . The parties hereto consent to the Jurisdiction of any state or federal court in Cuyahoga County, Ohio for the resolution of any dispute arising out of or relating to this Agreement.

According to Revman, the only claims asserted against it in Alliance's Complaint are tort and statutory claims that do not arise out of or relate to the Agreement.  Revman does not

10

challenge the validity nor the enforceability of the forum selection clause, merely its applicability to the claims at issue.

Count Four of Alliance's Complaint alleges Tortious Interference with Contract against Revman and Cornerstone.  Alliance alleges that Defendants were aware that Alliance had contracts with Defendants Bishop, Hendrix and Rambusch that contained non-solicitation and non-competition restrictive covenants.  In spite of this knowledge, Revman encouraged these employees to solicit Plaintiffs' employees to work for Cornerstone.

Count VII alleges Misappropriation of Trade Secrets against all Defendants in violation of 18 U.S.C. § 1836 and Ohio Revised Code § 1333.61.  Specifically, Alliance alleges Revman disclosed Alliance's confidential trade secrets to Cornerstone without Alliance's consent or permission.

A "contractually-based forum selection clause will encompass tort claims if the tort claims 'ultimately depend on the existence of a contractual relationship' between the parties." *Smith v. Swaffer,* 566 F. Supp. 3d 791, 801 (N.D. Ohio 2021) quoting *Ricketts v.  Hybris AG,* No. 1:15 CV 277, 2015 WL 13679481, at *3 (N.D. Ohio June 19, 2015).   Thus, tort claims that are "contract-related" arise from and are related to the contract and would then fall under the forum selection clause.   "[B]ecause the breach of contract claims turn on the interpretation of contract terms, the tort claims which follow from the alleged breach are dependent on such interpretation." *Wireless Properties, LLC v. Crown Castle Int'l Corp.,* No. 1:10-CV-269, 2011 WL 3420734, at *7 (E.D. Tenn. Aug. 4, 2011).  The Sixth Circuit has stated as a general rule, "contract-related tort claims involving the same operative facts as [are] parallel claim[s] for breach of contract [and] should be heard in the forum selected by the contracting parties." *Gen.*

11

*Envtl. Sci. Corp. v. Horsfall,* 1994 WL 228256 at *8 (6th Cir. May 25, 1994).   Therefore,

"[r]egardless of the duty sought to be enforced in a particular cause of action, if the duty arises

from the contract, the forum selection clause governs the action." *Hugel v. Corp. of Lloyd's*, 999

F.2d 206, 209 (7th Cir.1993).  This rule includes "tort or consumer protection claims 'related to'

the contract's purpose." *Hasler Aviation, L.L.C. v. Aircenter, Inc.*, 2007 WL 2463283 at *5

(E.D.Tenn. Aug. 27, 2007).

Thus, the question before the Court is whether the Tortious Interference and

Misappropriation of Trade Secrets claims against Revman arise from or relate to the Spartanburg

Agreement.

The Court holds the answer is no.  First, the Tortious Interference with Contract does not

rely on any provision in the Spartanburg Agreement, but instead, concerns Revman's knowledge

of separate agreements between Alliance and its former employees.  In their Complaint, Alliance

alleges "Cornerstone and Revman had knowledge of the restrictions that Bishop, Hendrix and

Rambusch were subject to under the Bishop Agreement, Hendrix Agreement and Rambusch

Agreement, respectively."  (Complaint at 126).  "Notwithstanding this knowledge, Cornerstone

and Revman intentionally interfered with the Bishop Agreement, Hendrix Agreement and

Rambusch Agreement by encouraging Bishop , Hendrix and Rambusch to solicit Alliance's

Assigned Employees and Supervisory Employees in breach of their respective agreements."  (*Id.*

at 128).  Thus, the Court would only need to consider the employee agreements between Alliance

and its former employees, Bishop, Hendrix and Rambusch.   In fact, Alliance does not invoke the

non-solicitation portion of the Spartanburg Agreement in their claim.

The Complaint further alleges that Revman misappropriated Alliances' trade secrets.

These trade secrets were entrusted to Bishop, Hendrix and Rambusch for the limited purpose of their employment with Alliance.  These trade secrets were protected by Alliance via non-disclosure provisions contained within the Bishop, Hendrix and Rambusch employment agreements.  Yet, Bishop, Hendrix and Rambusch disclosed and used Alliances' trade secrets on behalf of Cornerstone without Alliance's consent.   Alliance entrusted these secrets to Revman for the limited purpose of performing under the Spartanburg and Grantsville Agreements, but Revman allegedly disclosed those trade secrets to Cornerstone without Alliance's consent.  (*Id.* at 151-154 & 162-165).  Moreover, Alliance argues that absent the contractual agreement between it and Revman, Revman would not have had access to the trade secrets.  Therefore, Alliance alleges the claims do arise out of or relate to the Agreements.  However, the Spartanburg and Grantsville Agreements contain no non-disclosure covenants.  Consequently, resolution of the claim will not require reference to any provision of those Agreements.   Instead, the non-disclosure covenants are found solely in the individual Defendant's Agreements and it is in those contracts that the non-disclosure duties are found.

Therefore, because Alliance's claims against Revman do not arise from or relate to the Spartanburg Agreement, the forum selection clause does not apply to these claims.[1]

---

[1]  There is a further basis for not enforcing the forum selection clause in this matter.  As Revman points out, the parties are engaged in litigation in *South Carolina Revman International, Inc.  v.  Alliance Industrial Solutions, LLC,* 2024 CP4201213, on the enforceability of the Spartanburg Agreement.  Revman filed a declaratory judgment action arguing the Spartanburg Agreement is void or voidable due to Alliance's failure to obtain a Professional Employer Services license and because Revman never breached the Agreement.   In response, Alliance filed an Answer and Counterclaim for breach of the Spartanburg Agreement. Alliance then filed a Motion for Judgment on the Pleadings arguing the services it provided do not constitute "professional employer services," the Spartanburg Agreement is enforceable and that Revman has breached the non-solicitation provision of the Agreement.  That Motion was denied by the South Carolina Court.  What is noticeably absent in the South Carolina case, which predates the

**Due Process**

In deciding whether a court possesses personal jurisdiction over the parties, the Court

---

claims in this suit, is Alliance's failure to invoke the forum selection clause.   A review of the South Carolina docket and that Court's ruling on Alliance's Motion for Judgment on the Pleadings do not show that Alliance invoked the forum selection clause in that matter. Thus, there is a strong estoppel argument against allowing Alliance to assert the forum selection clause before this Court on claims it argues are related to or arise out of the Spartanburg Agreement, while it litigates the breach of contract claims on the Spartanburg Agreement in South Carolina. Moreover, as Revman argues, Fed.  R.  Civ P.  13 requires all compulsory counterclaims be filed in the original suit.   "Rule 13(a) of the Federal Rules of Civil Procedure provides:
A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a)(1).

"As the foregoing language indicates, "a claim's compulsory status depends on whether (1) the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (2) the claim is one that the party 'has' at the time that the party is to file his responsive pleading." *Bauman v. Bank of Am., N.A.,* 808 F.3d 1097, 1101 (6th Cir. 2015) quoting  *Kane v. Magna Mixer Co.,* 71 F.3d 555, 562 (6th Cir.1995) (emphasis in original).  A "party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action."  *Sanders v. First Nat'l Bank & Trust Co. in Great Bend,* 936 F.2d 273, 277 (6th Cir.1991).  South Carolina's and Ohio's procedural rules mirror that of Federal Rule 13. See *Deutsche Bank Nat'l Tr. Co. as Tr. for NovaStar Mortg. Funding Tr., Series 2007-1 NovaStar Equity Loan Asset Backed Certificates, Series 2007-1 v. Est. of Houck*, 440 S.C. 409, 413, 892 S.E.2d 280, 282 (2023).  ("Rule 13(a) plainly provides that a counterclaim is compulsory 'if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'").  See also *Guerrini v. Chanell Roofing & Home Improvement, LLC,* 2024-Ohio-585, ¶ 36,37, 236 N.E.3d 376, 387.

All these reasons militate in favor of declining to apply the forum selection clause to the claims against Revman.  To do so would have the parties litigating the contract itself in one forum while litigating claims allegedly arising from or related to that contract in another forum. The Federal Rules of Civil Procedure and judicial economy principles weigh against the application of the clause.

applies a two-step inquiry. The Court must consider whether a plaintiff's contacts with the forum state comport with Due Process and whether Defendant's conduct satisfies one of the provisions on Ohio's Long-Arm statute. See *Gunn v. E-Verifile.com, Inc.*, No. 1:18CV457, 2019 WL 1071205, at *2 (N.D. Ohio Mar. 7, 2019) citing *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota,* 545 F.3d 357, 361 (6th Cir. 2008). Federal courts first apply the law of the forum state when determining whether personal jurisdiction exists. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 767 (N.D. Ohio 2019) citing *Mid-West Materials, Inc. v. Tougher Indus., Inc.,* 484 F. Supp. 2d 726, 729 (N.D. Ohio 2007) (citing *Youn v. Track, Inc.,* 324 F.3d 409, 417 (6th Cir. 2003).

"To establish personal jurisdiction over a defendant, the Court must find that: (1) the defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the federal Due Process Clause.*" Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.,* 603 F. Supp. 3d 561, 566 (N.D. Ohio 2022) *citing Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.,* 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

In its Motion, Revman alleges Alliance cannot show that the Court has personal jurisdiction over it under the due process analysis so that examination of Ohio's long-arm statue is unnecessary. "[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Straight v. LG Chem, Ltd.,*

640 F. Supp. 3d 795, 802 (S.D. Ohio 2022) quoting *Conn,* 667 F.3d at 711–12.

"Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'" *Blessing v. Chandrasekhar,* 988 F.3d 889, 904 (6th Cir. 2021) quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A "minimum contacts" analysis "looks to the defendant's contact with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). "The relationship must arise out of contacts that the "defendant himself" creates with the forum State." The defendant must "purposefully avail[ ] [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," which "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted).

"A defendant may be subject to personal jurisdiction even if she does not physically enter the forum state, if her 'efforts are 'purposefully directed' toward residents of another State,'" *Blessing*, 988 F.3d at 904 quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174, but "the plaintiff cannot be the only link between the defendant and the forum," *Walden,* 571 U.S. at 285, 134 S.Ct. 1115.

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)).

Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state.  *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002), citing *Conti v. Pneumatic Prods. Corp*., 977 F.2d 978, 981 (6th Cir.1992). General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."  *Bird*, 289 F.3d at 873 (citation omitted).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile: for a  corporate defendant, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Goodyear Dunlop tires operations, S.A. v.  Brown,* 564 U.S. 915, 924 (2011).  The Supreme Court identified these corporate paradigm forums as the state in which it is incorporated or has its principal place of business. *Id.*

There is no real dispute that the Court lacks general jurisdiction over Revman.  According to the declaration of Donald W.  Williams, Vice-President of Human Resources and Asset Protection for Revman, Revman is a Delaware corporation with its principal place of business in New York.  It operates warehouses in Spartanburg, South Carolina and Grantsville, Utah. Revman owns no property in Ohio nor does it have any employees in Ohio.  (Williams dec.  ¶ 3). As there is no dispute of these facts, the Court finds it lacks general jurisdiction over Revman.

Turning now to specific jurisdiction, the Sixth Circuit has articulated a three-part test for determining whether the exercise of specific  jurisdiction comports with Due Process:  "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's

17

activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

A non-resident defendant "purposefully avails" itself of the privileges in the forum state where it "reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). "Under the prima facie standard, 'it [still] remains the plaintiff's burden,' (internal citation omitted) and in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *H&H Wholesale Services, Inc., v. Kamstra Int'l., B.V., et al.,* No. 21-1533, 2021 WL 5505495 (6th Cir. Nov. 24, 2021) quoting *Theunissen*, 935 F.2d at 1458.

Revman asserts it has no continuing relationship or obligations in Ohio.  The only relation to Ohio is the fact that Alliance resides here.  Williams' declaration attests that prior to its Agreement with Alliance, Revman used several staffing agencies to staff its Spartanburg warehouse.  One of these agencies was Prologistix, whose principal point of contact was Bishop. Revman was pleased with Bishop's customer service and when he left Prologistix in 2020 and joined Alliance, Bishop solicited Revman to use Alliance as a staffing agency.  (Williams dec. ¶ 4-6).  Bishop was not located in Ohio at the time he reached out to Revman to solicit business for Alliance.  (*Id.* at 12.).  He further attests that he lacks any knowledge of any Revman employee traveling to Ohio to meet with Alliance and that Revman never received any confidential information from Alliance in Ohio.  Williams denies Revman had any knowledge of any

18

restrictive covenants contained in Alliance's employee agreements.  (*Id.* at 12).  Finally, he attests that Alliance never asked Revman for a non-disclosure agreement, nor is the identity of any Alliance employee at the Spartanburg facility a trade secret, as only about eighteen percent of the employees working at the Spartanburg facility were hired by Alliance.  (*Id*. at 16-17).  Consequently, Revman argues it did not purposefully avail itself of the privileges of Ohio as it was Alliance that reached out to Revman in South Carolina to provide staffing services for Revman in South Carolina.

In response, Alliance offers the Declaration of Dana Wegzynowski, Chief Operating Officer of Alliance Industrial Solutions, LLC.  Wegzynowski attests that Revman reached out to her in Ohio hundreds of times for assistance with issues relating to the staffing issues provided by Alliance.  (Wegzynowski dec.  5).  Wegzynowski attests that Revman and Alliance held weekly virtual meetings and quarterly business reviews.  (*Id.* at 12).  Revman reached out to Wegzynowski to help configure timeclocks at the Spartanburg facility to properly track employee hours and the employees production.  (*Id.* at 13.).  Revman was pleased with Alliance's work at the Spartanburg facility so it requested Alliance provide it staffing services in Revman's new Grantsville, Utah facility.  (*Id.* at 14).  This required significant back and forth between Revman and Alliance to address vetting of new candidates for the Grantsville facility.  Wegzynowski attest she assembled a list of new candidates which she proved to Williams for his approval. These involved much back and forth about particular candidates.  (*Id.* 16-18).  Wegzynowski attests to many other interactions concerning the exchange of employee production reports; remote management of Alliance's employees at Revman facilities by managers located in Ohio; staffing review meetings between Revman and Alliance and weekly virtual meetings between

19

Revman and Alliance on issues at the Grantsville facility to address staffing levels, employee discipline, new openings, performance, employee injury and payroll issues.  (*Id.* at 19-23). Finally, Wegzynowski attests that Alliance's records show over 1000 emails from Revman to Ohio-based Alliance employees, not including the delivery of checks to Alliance in Ohio.  (*Id.* at 31-32).

A court may exercise personal jurisdiction over a defendant "where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State." *Burger King*, 471 U.S. at 475–76.  Thus, where the defendant "deliberately" has engaged in significant activities within a State, (internal citation omitted) or has created "continuing obligations" between himself and residents of the forum, (internal citation omitted) he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.  *Id.* at 476.  Moreover, "jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State."  *Id.*

In light of the declaration of Wegzynowski, attesting to the continuous communications and ongoing business interactions between Revman and Alliance directed at Alliance employees in Ohio, the Court finds Alliance has demonstrated that Revman purposefully availed itself of the privileges of Ohio.

The second due process factor requires a court examine whether the cause of action arises from the defendant's activities in the forum state.  "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen

from those contacts." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1267 (6th Cir.1996).

This factor "does not require that the cause of action formally 'arise from' defendant's contacts

with the forum; rather, this criterion requires only 'that the cause of action, of whatever type,

have a substantial connection with the defendant's in-state activities.' " *Bird v. Parsons*, 289 F.3d

865, 875 (6th Cir. 2002) quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d

1087, 1091 (6th Cir.1989). "Only when the operative facts of the controversy are not related to

the defendant's contact with the state can it be said that the cause of action does not arise from

that [contact]." *S. Mach. Co.,* 401 F.2d at 384 n.29.

Looking first at Alliance's Tortious Interference claim, Alliance alleges Revman

intentionally interfered with the Bishop, Hendrix and Rambusch contracts by encouraging them

to solicit Alliance's Assigned Employees and Supervisory employees. In contrast, Williams

asserts in his declaration that Revman was not aware of any restrictive covenants in the Bishop,

Hendrix or Rambusch Agreements. When considering the motion only on the pleadings and

declarations the Court does "not weigh the controverting assertions of the party seeking

dismissal." *MAG IAS Holdings, Inc. v. Schmuckle,* 854 F.3d 894, 899 (6th Cir. 2017).

However, the Complaint does not allege that the solicitation of the employees occurred in

Ohio. The supervisory employees and assigned employees all were physically located in South

Carolina or Utah. Thus, any solicitation would necessarily have had to occur in those states

where the employees were physically located. Thus, importantly for the "arising from" analysis

the Sixth Circuit has held that "physical presence is not the touchstone of personal jurisdiction,

and hence, personal jurisdiction may exist over a defendant although he is not physically present

in the forum if he purposefully directs communications into the forum, and those

21

communications form the 'heart' of the cause of action." *Intera Corp. v. Henderson,* 428 F.3d 605, 617–18 (6th Cir. 2005). Here, the communications that form the heart of Alliance's claims against Revman were not directed to Ohio but were instead directed to Alliance's employees working in South Carolina. Thus, Alliance has not satisfied the "arising from" factor.

**Reasonableness**

"The third prong of a due process analysis requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.*" Intera Corp. v. Henderson,* 428 F.3d 605, 618 (6th Cir. 2005). "Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Id.*

A review of these factors favors a finding that it would be unreasonable for the Court to exercise its jurisdiction over Revman. Unquestionably, it would be burdensome for Revman to defend the action here in Ohio, particularly when the vast majority of the relevant witnesses and evidence are located in South Carolina. Moreover, the parties are presently litigating their contract dispute in South Carolina making the burden that much greater on Revman to litigate in multiple forums. Ohio has an interest in protecting its own citizens but Alliance's interest in obtaining relief does not favor Ohio since it chose to defend the declaratory judgment action in South Carolina and filed a counterclaim for breach of contract there. Thus, Alliance has demonstrated it was confident it could obtain relief in South Carolina as opposed to invoking the

forum selection clause and asserting its breach of contract claims in Ohio.   Finally, South

Carolina has a substantial interest in an efficient resolution of the controversy as it has already

expended resources and time in litigating the merits of the contract dispute there and is presently

engaged in attempts to mediate the dispute in South Carolina.

Therefore, the for the foregoing reasons, the Court finds the due process factors militate

against the Court's personal jurisdiction over Alliance's claims against Revman.

**Transfer**

Once the Court has determined it lacks personal jurisdiction over a defendant it must

determine whether dismissal or transfer is appropriate.   28 U.S.C. § 1406(a) reads:  "[t]he district

court of a district in which is filed a case laying venue in the wrong division or district shall

dismiss, or if it be in the interest of justice, transfer such case to any district or division in which

it could have been brought."  In *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir. 1993) the

Sixth Circuit affirmed that a Court that lacks personal jurisdiction may transfer a case to a Court

that possesses personal jurisdiction.  ("[S]ection 1406(a) does not require that the district court

have personal jurisdiction over the defendants before transferring the case."  In addition 28

U.S.C. 1631 reads:

> Whenever a civil action is filed in a court as defined in section 610 of this title or
> an appeal, including a petition for review of administrative action, is noticed for
> or filed with such a court and that court finds that there is a want of jurisdiction,
> the court shall, if it is in the interest of justice, transfer such action or appeal to
> any other such court (or, for cases within the jurisdiction of the United States Tax
> Court, to that court) in which the action or appeal could have been brought at the
> time it was filed or noticed, and the action or appeal shall proceed as if it had been
> filed in or noticed for the court to which it is transferred on the date upon which it
> was actually filed in or noticed for the court from which it is transferred.

28 U.S.C.A. § 1631 (West).  See also *Roman v. Ashcroft*, 340 F.3d 314, 328 ("In light of the language of § 1631 and its purpose, we therefore conclude that the statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction.").

Both § 1406(a) and § 1631 require the Court to determine if it is in the interests of justice to transfer a case rather than dismiss.

> Section 1631 provides that if a civil action or appeal is filed in a court lacking jurisdiction, "the court *shall,* if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631 (emphasis added). A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice.

*Roman,* 340 F.3d at 328.

Here, the Court finds transfer is the appropriate vehicle given the parties extensive litigation efforts in South Carolina and the evidence and vast majority of witnesses reside there. Moreover, Revman resides there and the incidents from which Alliance's causes of action arise occurred in South Carolina.  However, because Alliance has asserted claims under Misappropriation of Trade Secrets in Violation of the Defend Secrets Act 18 U.S.C. § 1836 and that statute does not permit concurrent jurisdiction of state courts to hear such a claim, the Court finds transfer to the United States District Court for the District of South Carolina appropriate.

Therefore, for the foregoing reasons, the Court finds it lacks personal jurisdiction over Revman and transfers Alliance's claims against it to the United States District Court for the District of South Carolina for further adjudication.

IT IS SO ORDERED.

24

                  s/ Christopher A. Boyko
                  CHRISTOPHER A. BOYKO
                  United States District Judge

Dated: January 7, 2025